**Thomas Wallace LIVELY,**
**Plaintiff–Appellant,**

**v.**

**UNITED STATES of America,**
**Defendant–Appellee.**

**John WILLIAMS, Jr.,**
**Plaintiff–Appellant,**

**v.**

**UNITED STATES of America,**
**Defendant–Appellee.**

Nos. 88–3334, 88–3354.

United States Court of Appeals,
Fifth Circuit.

April 18, 1989.

---

**31.** 28 U.S.C. § 2412(a).

George R. Covert, Owen M. Goudelocke, Covert & Braud, Baton Rouge, La., for plaintiffs-appellants.

Leslie Yu, David S. Fishback, Asst. U.S. Attys., Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., Stanford O. Bardwell, Jr., P. Raymond Lamonica, U.S. Attys., Baton Rouge, La., for defendant-appellee.

Before THORNBERRY, GEE, and POLITZ, Circuit Judges.

GEE, Circuit Judge:

Plaintiffs in these actions were employed as Longshoremen working on the docks of the Baton Rouge Port Commission in Port Allen, Louisiana. During the period from 1959 through 1966 they were exposed to raw asbestos, which they helped to unload from ships traveling from South Africa. The asbestos was imported for stockpiling by the General Services Administration (G.S.A.) pursuant to the Strategic and Critical Materials Stockpiling Act (The Act), 50 U.S.C. §§ 98 et seq. The Act authorizes the Secretaries of the Army, Navy & Interior to determine that some materials are of strategic importance and to determine that quantities of these materials should be stockpiled. The secretaries are authorized by the statute to direct the Administrator of the G.S.A. to make the purchases and provide for storage security and maintenance of the material. The Administrator is authorized, pursuant to 40 U.S.C. § 481, to prescribe policies and methods of procurement necessary to carry out his directive.

The plaintiffs allege that the United States is liable to them under the Federal Tort Claim Act (FTCA) for injuries resulting from their exposure to the asbestos. Their complaints assert that the United States negligently failed to warn them of the danger of exposure to asbestos and negligently failed to provide proper equipment to reduce that danger. The complaints further maintain that the United States is strictly liable for plaintiffs' inju-

ries because stockpiling asbestos was an ultrahazardous activity.

The district court in *Lively* dismissed the complaint for lack of subject matter jurisdiction, holding that the plaintiffs' claims were within the discretionary function exemption to the FTCA. The court further held that plaintiffs could not assert a strict liability claim against the United States. In *Williams* the district court granted summary judgment for the United States, dismissing plaintiffs' claims with prejudice and adopting the opinion of the district court in *Lively*. We affirm the judgments of the district courts.

I. *The Discretionary Function Exception*

The discretionary function exception to the FTCA is found at 28 U.S.C. § 2680(a), stating that there shall be no liability under the FTCA for

(a) *Any claim* based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, *or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.* (emphasis added)

The plaintiffs, focusing upon the phrase "exercising due care" contend that the discretionary function exception is applicable only if the agency or employee exercised due care. This reading is incorrect. The subsection contains two clauses, separated by the disjunctive "or", which set forth two separate exceptions to the FTCA. The first clause, excepting claims based on the execution of a statute or regulation, requires for its application that the actor have exercised due care. The second clause, excepting claims based on the performance of a discretionary function, has no such requirement. These claims are excepted from the FTCA regard-

less of whether the actor exercised due care. The question which we must answer, therefore, is not whether the Government acted with due care but whether the Government's conduct was the result of the performance of a discretionary function.

It is impossible "to define with precision every contour of the discretionary function exception." *United States v. Varig Airlines*, 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984).

> While all acknowledge that the important acts of high officials and the routine acts of their low level agents constitute the extremes of the discretionary-nondiscretionary function spectrum, all also recognize that there is no wholly satisfactory classification of those acts that fall near the midpoint of this spectrum.

*Gordon v. Lykes Bros. S.S. Co., Inc.*, 835 F.2d 96 (5th Cir.1988), cert. denied, —— U.S. ——, 109 S.Ct. 73, 102 L.Ed.2d 50 (1988). The Supreme Court has, however, set forth several factors which are helpful in determining whether conduct falls within the discretionary function exception. First, "... the basic inquiry ... is whether the challenged acts ... are of the nature and quality that Congress intended to shield from tort liability," *Varig Airlines*, 467 U.S. at 813, 104 S.Ct. at 2764. Second, "... it was plainly intended to encompass the discretionary acts of the government acting in its role as a regulator of the conduct of private individuals...." *Varig Airlines* at 813, 104 S.Ct. at 2764. Third, "[w]here there is room for policy judgment and decision there is discretion."

Applying these criteria to the Government activities in this case we conclude that the district courts correctly held that the activities were within the discretionary function exception. The activities at issue in this case are the decision to stockpile the asbestos; the decisions regarding the manner of procuring the asbestos, including the decision not to place warnings on the bags; and the decision not to provide or require safety equipment or safety programs for the stevedores. The decision to stockpile asbestos was an administrative decision grounded in social, economic and public policy. The Secretaries of the Army, Navy and Interior base their decisions to stockpile a material on their determinations that the material is critical to the nation's industrial, military or naval needs. 50 U.S.C. § 98. When making the decision to stockpile, the Secretaries are exercising precisely the type of discretionary authority that Congress sought to immunize from judicial second-guessing in an FTCA action.

The G.S.A.'s choice of procurement policies also is within the exception. As we stated in *Ford v. American Motors Co.*: "Both the evaluation of actual or suspected hazards and the decision to proceed in a particular manner in light of those hazards, are protected discretionary acts not subject to tort claims ..." 770 F.2d 465, 467 (5th Cir.1985). Consequently, in *Ford* we held that the Government's decision to sell used United States Postal Service jeeps to the public without warning of the vehicles' propensity to roll over was a discretionary act exempted from FTCA liability. Like the Postal Service in *Ford,* the G.S.A. in this case chose to proceed with a program without warning of the hazards of the substance to which it was exposing the public. G.S.A. had the authority to promulgate specifications for purchasing asbestos, including specifications for packaging the material. When it exercised its authority, G.S.A. chose not to require a warning on the asbestos packages. Like the decision to stockpile the asbestos, the procurement policies are within the discretionary function exception.

This holding is consistent with our decision in *Gordon v. Lykes Brothers Steamship Co., Inc., supra.* During World War II, the War Shipping Administration assumed control of almost all of the nation's merchant marine vessels. The vessels' private owners continued, however, to operate the vessels under General Agency Agreements. Pursuant to the Government's efforts to standardize construction, a large amount of asbestos was used in the vessels. In *Gordon* we held that the Government's decision not to establish an asbestos safety program for the merchant marines fell within the discretionary function exception. We explained that "lack of due care

in promulgating a policy, or in having no policy at all on an issue, however imprudent it might seem, is encompassed within the discretionary function exception." *Id.* (citations omitted). Where the Government does not create a danger "after the critical discretionary decision ha[s] been made," the Government is exempt from liability under the discretionary function exception. Like the War Shipping Administration during World War II, the Government in the 1960s decided to stockpile asbestos and chose not to have a safety policy or program for the workers it exposed to asbestos. Although the decision arguably was imprudent, the Government did not create an additional danger after it made its discretionary decisions and is not now subject to liability for its decisions.

Although we agree with the Government that the activities at issue in this case are within the discretionary function exception, we reject the Government's offered interpretation of that exception: that if Government activity involves conduct that is rooted in policy, the discretionary function exception bars a cause of action based on that conduct unless the Government employee violated a mandatory regulation that restricts his discretion or judgment. Under this interpretation two types of activity would fall within the exception: violations of specific, mandatory regulations or statutes and ordinary, common law torts where the exercise of discretion is not based on policy considerations.

As authority for the first part of this theory the Government cites *Berkovitz v. United States,* — U.S. ——, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) in which the Court held that the violation of a specific mandatory requirement was not exempt from liability under the discretionary function exception. In support of the second part of its theory the government cites *Denham v. United States,* 834 F.2d 518 (5th Cir.1987). In *Denham,* we held that the Government was not exempt from liability when it chose to create a swimming area with bouys anchored by concrete blocks but failed to ensure that the blocks would not drift into an area where they would endanger swimmers. According to

the Government, it would be exempt from liability for the same decision if the Government employee decided not to look after the bouys because of economic or social policy considerations. The Government misconstrues the *Denham* court's reasoning. The court did not rely on the lack of policy considerations; rather the court held that the Government was "performing an operational function and it did not have the discretion to do so negligently ...." *Id.* at 521 (citations omitted).

The Government's position rests on tenuous grounds. Both the Supreme Court and our Circuit have said, time and again, that it is impossible to define the precise contours of the exception. *Varig,* 467 U.S. at 813, 104 S.Ct. at 2764, 81 L.Ed.2d at 674; *B & F Trawlers, Inc. v. United States,* 841 F.2d 626, 631 (5th Cir.1988); *Gordon,* 835 F.2d at 99. Further, neither the Supreme Court nor the Circuit has characterized the exception as sweepingly as the Government does in these cases. The *Berkovitz* court, far from recognizing the Government's theory, simply held that the violation of a specific mandatory regulation is not exempt from liability. The court did not attempt to define the universe of Government activities that are actionable under the FTCA. Furthermore, in *Denham,* we recognized liability for a type of Government action that would be exempt if we accepted the Government's construction. Finally, the Government's construction would subsume the FTCA: Virtually any decision to act or not to act could be characterized as a decision grounded in economic, social or public policy and, thus, exempt. Although we construe the exception broadly, we have never construed it so that the exception swallows the rule. We therefore reaffirm our holding that in determining whether the discretionary function exception applies, we examine the nature and quality of the activity to determine if it is the type that Congress sought to protect. The activity in this case is of that type and is, therefore, within the discretionary function exception.

## II. *Ultra-hazardous Activity And Strict Liability*

 The plaintiffs contend that the FTCA permits suits against the Government based on strict liability, i.e., no fault. In support of this contention the plaintiffs cite 28 U.S.C. § 1346(b) which provides, in pertinent part:

> ... the district court ... shall have exclusive jurisdiction of civil actions on claims against the United States ... for personal injury ... *caused by the negligent or wrongful act or omission of any employee of the Government* ... where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. (emphasis added)

According to the plaintiffs, if this action were brought in Louisiana against a private person recovery would be permitted. Therefore, according to the plaintiffs, § 1346(b) permits such an action against the United States. In order to arrive at this conclusion the plaintiffs, in citing § 1346(b), emphasize the language "in accordance with the law of the place where the act or omission occurred." Further, in their quotation from this subsection the plaintiffs delete the language we emphasize, i.e., that the injury must be caused by a *negligent* or *wrongful* act. Under the plain language of the entire subsection, it is clear that strict liability "no fault" claims are not cognizable under the FTCA. Further, the Supreme Court has unequivocally stated that the FTCA does "not authorize suits against the Government on claims based on strict liability for ultrahazardous activity...." *Laird v. Nelms*, 406 U.S. 797, 802–803, 92 S.Ct. 1899, 1902, 32 L.Ed.2d 499 (1972). The district courts therefore correctly dismissed these claims.

## III. *The Procedural Issues*

The plaintiffs contend that the district courts improperly disposed of their cases either by dismissal (Lively) or summary judgment (Williams). The gist of the argument in both cases is that plaintiffs had submitted affirmative evidence which established the existence of a genuine issue of material fact. In support of the argument the plaintiffs direct our attention to their "statement of material facts as to which there is a genuine dispute."[1] These statements may establish the existence of disputed facts which are material to the plaintiffs' substantive case. They do not, however, establish the existence of any fact which would negate the government's claim that its actions were within the discretionary function exception. The district courts therefore correctly concluded that there were no genuine issue as to any *material* fact and that the Government was entitled to judgment as a matter of law.

The judgments of the district courts are, therefore,

AFFIRMED.

---

**1.** With the exception of the change in the name of the plaintiff in these statements they are identical in content.